IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL B.,[1] )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN J. O'MALLEY, )<br>Commissioner of Social Security,[2] )<br>)<br>　　　　Defendant. )<br>) | No. 22 C 3941<br><br>Magistrate Judge<br>Daniel P. McLaughlin |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carl B.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [11] is denied, and the Commissioner's cross-motion for summary judgment [20] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On September 29, 2014, Plaintiff filed claims for DIB and SSI, alleging disability since July 10, 2010. Plaintiff's claims were denied throughout the administrative stages, after which he timely appealed to this Court. Pursuant to an agreed remand, the Court remanded the matter on September 26, 2018. A remand hearing before an Administrative Law Judge ("ALJ") was held on August 8, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. Plaintiff amended his alleged onset date to September 29, 2014.

On December 12, 2019, the ALJ again denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's December 12, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's December 12, 2019 decision, Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of September 29, 2014. At step two, the ALJ concluded that Plaintiff had the following

severe impairments: obesity; hypertension (HTN); obstructive sleep apnea (OSA); chronic obstructive pulmonary disease (COPD); degenerative disc disease (DDD) of the lumbar spine; bipolar disorder; and post-traumatic stress disorder (PTSD). The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: is limited to never climbing ladders, ropes, or scaffolds; no more than occasionally stooping; no concentrated exposure to respiratory irritants or hazards (*i.e.*, work at heights); has no limitations in understanding or memory; has limitations in sustained concentration and persistence, as he is moderately limited in the ability to carry out detailed instructions, in his ability to maintain attention and concentration for extended periods, and in his ability to work in coordination with or in proximity to others without being distracted by them, such that he should be limited to work that involves short, simple instructions, and simple, routine tasks, consistent with SVP 1 and SVP 2 jobs; can maintain attention and concentration for two-hour periods at a time, after which he would get his normally scheduled breaks; cannot perform teamwork-type tasks with coworkers; is moderately limited in his ability to interact appropriately with the general public, such that his work should not involve public interaction as part of the normal job duties; and is moderately limited in his ability to set realistic goals or make plans independently of others, such that he should be limited to simple, routine tasks,

3

only occasional changes in the workplace setting and duties, and simple decision-making.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a delivery truck driver. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386,

389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

5

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

6

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to properly assess the medical opinions and failed to include proper explanations for the weight assigned; and (2) the ALJ failed to construct an RFC assessment that accommodates all of Plaintiff's deficits arising out of all of his impairments, in combination. Each argument will be addressed below in turn.

### A. The ALJ's Assessment of the Medical Opinions

In advancing his first argument, Plaintiff contends that "the ALJ improperly rejected the source statement provided by Plaintiff's long-time treating therapist, Nancy Bowden, LPC." ([11] at 9.) In her decision, the ALJ assessed Ms. Bowden's opinions as follows:

> Counselor Nancy Bowden, LPC, opined in June 2019 that the claimant had a marked restriction in performing activities of daily living including being unable to keep a schedule and having ups and downs, having a marked restriction in socializing including not liking to be around people, having a marked restriction in sustaining concentration and attention which was happening every night, and living in a highly supportive and protective setting to help with his severe symptoms because he was living with his mother and avoiding people outside of his home. This opinion is given little weight. To begin, there are no treatment notes from Ms. Bowden in the file. As explained above, I requested a subpoena on behalf of the claimant for treatment records, but none were received from Ms. Bowden. Additionally, Ms. Bowden checked boxes on [a] form and provided little explanation for these marked limitations. Although she reported examining the claimant on the same date as this opinion, this exam was not provided. Finally, this opinion is grossly inconsistent with the actual treatment records in the file, which show that the claimant's symptoms stabilized with medication, as the claimant had several mental status exams without issues in concentration/attention, demeanor/cooperation, and following conversations/answering questions.

7

(R. 571 (citations omitted).)

Plaintiff's asserts that the ALJ erroneously "ignore[ed]" the treating physician rule[3] in relation to Ms. Bowden's opinions. ([11] at 8-9.) This argument is unavailing for the simple reason that Ms. Bowden – an LPC – is not a treating physician and not an "acceptable medical source." *See Ann S. v. Saul*, No. 19 CV 1661, 2021 WL 354001, at *11 (N.D. Ill. Feb. 2, 2021) ("[T]he ALJ correctly determined that Mr. Bounomo was not an acceptable medical source, given that he is a mental health counselor, not a physician or psychologist."). While an ALJ "may still consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants," she is only "required to minimally articulate her reasons for rejecting [such a professional's] opinion." *Dallas E. H. v. Kijakazi*, No. 20 C 2717, 2021 WL 4635802, at *7 (N.D. Ill. Oct. 7, 2021). Here, the Court finds that the ALJ provided the requisite minimal articulation for discounting Ms. Bowden's opinions, as she explained that Ms. Bowden's opinions were unsupported by treatment notes, unsupported by specific explanations, and inconsistent with the existing treatment records. *See Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *2 (N.D. Ill. June 29, 2021) ("As a licensed professional counselor ('LPC'), Butler

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2014, and, therefore, the ALJ was required to apply the former treating physician rule to any opinions of treating physicians.

8

is not an acceptable medical source under the regulations. . . . The ALJ was required to minimally articulate his reasons for rejecting Butler's opinion.") (citations omitted).[4]

Plaintiff also contends that "the ALJ failed to properly explain why she assigned great weight to [the] opinions" of the State agency psychological consultants. ([11] at 8-9.) In her decision, the ALJ set forth the following assessment of the State agency psychological consultants' opinions:

> The State Agency psychological consultants opined in 2015 that the claimant could remember locations or work-like procedures; could understand and remember short simple instructions although he would [have] difficulty remembering detailed instructions; would have difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however he could perform simple tasks; would have difficulty in interacting appropriately with the general public and telling off others if he felt that he had been done wrong by others, so he should be limited to work tasks that did not require interaction with the general public; could respond appropriately to changes in work settings, being aware of normal hazards and traveling in unfamiliar setting. These opinions are given great weight because they are consistent with treatment records, which also do not support the claimant having any significant memory, concentration, or attention problems. Although the claimant complained of some anger/frustration issues, especially regarding child custody issues, these appeared to have improved with treatment, including therapy and medications, he had several appointments where he reported having improvement from his treatment and/or denied having any symptoms, had mental status exams without deficits except for some issues with mood and affect, and had treatment notes from providers showing that his symptoms had stabilized after several medications were attempted. Finally, the moderate limitations in concentration and attention are supported by the record, including the claimant reporting he had issues,

---

[4] Even if the treating physician rule were applicable to Ms. Bowden, the Court finds that the ALJ provided a sufficient "sound explanation" for discounting her opinions. *See Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection.") (citation omitted).

9

> but the above-noted residual functional capacity has accommodated those limitations.

(R. 570-71 (citations omitted). In light of this fulsome analysis, the Court rejects Plaintiff's assertion that the ALJ's assessment of the State agency psychological consultants' opinions was inadequate. The Court finds no error in the ALJ's evaluation of those opinions that would require remand.

### B. The ALJ's Assessment of Plaintiff's Obesity, Mental Deficits, and Impairments in Combination

Plaintiff contends that the ALJ did not sufficiently account for his obesity. With respect to Plaintiff's obesity, the ALJ first noted that "although [Plaintiff's] body mass index is categorized as obese, there is no indication that [his] obesity, alone or in combination with any other impairment, medically equals the criteria of any listing." (R. 554.) The ALJ later assessed Plaintiff's obesity as follows:

> [T]he record shows the claimant has a body-mass index (BMI) that was generally as high as 43. Under Social Security Ruling 19-2p, any BMI above 30 is classified as obese. However, the claimant was counseled on losing weight and making lifestyle changes, including eating healthy and exercising. During several periods of time, he did lose weight after dieting better. His cholesterol medication had been increased. He was told to consider looking into bariatric surgery because he was morbidly overweight. I note that the claimant's BMIs in the record have varied, as his [height] has been reported from 5'10" to 6'1", but his weight since the SSI filing date has been stable in the 330-340 pound range (resulting in BMIs in the 40s), until around 2018-19, when he lost weight. Nevertheless, the exacerbatory impact of the claimant's obese state is considered in assessing the above-noted residual functional capacity in a manner consistent with the directives set forth in Social Security Ruling 19-2p.

(*Id.* at 560 (citations omitted).)

The Court finds that the ALJ's consideration of Plaintiff's obesity was sufficient. A fundamental problem for Plaintiff is that he does not specifically

10

explain, beyond generalizations, how his obesity impacts his other impairments. Rather, Plaintiff asserts that obesity "*may* contribute to a limitation of the range of motion of the skeletal spine and extremities" and "*may* affect the person's physical and mental ability to sustain work activity." ([11] at 11 (emphasis added).) These generalized assertions are unavailing, as a claimant's challenge to the ALJ's assessment of obesity fails where the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). The claimant must "explain how her obesity exacerbated her underlying impairments." *Id.* Here, Plaintiff fails to cite to any evidence in the record and does not sufficiently explain how his obesity allegedly exacerbated his other impairments. *See Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized.").

      Plaintiff also takes issue with the ALJ's step three findings as to his mental impairments. In her step three analysis, the ALJ assessed the "paragraph B" criteria, namely, Plaintiff's impairments in the four broad areas of mental

11

functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 555-58.) Despite Plaintiff's protestations of error, the ALJ provided a thorough, 4-page analysis of the paragraph B criteria that considered the record evidence and reasonably concluded that the evidence supported the findings that Plaintiff had at most moderate limitations in the areas of interacting with others and in concentrating, persisting, or maintaining pace. Considering the ALJ's in-depth analysis, the Court finds no issues with the ALJ's assessment of Plaintiff's mental impairments that would require remand. *See Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 U.S. Dist. LEXIS 172594, at \*8-9 (N.D. Ill. Sep. 13, 2021); *Elizabeth A. v. Saul*, No. 19 C 6024, 2021 U.S. Dist. LEXIS 8348, at \*11 (N.D. Ill. Jan. 15, 2021). While Plaintiff argues that the ALJ "failed to accommodate all of Plaintiff's limitations in the mental RFC" ([11] at 12), the ALJ included multiple accommodations for Plaintiff's mental deficits in the RFC. Plaintiff does not specifically explain why these accommodations are inadequate.

Plaintiff generally argues that the ALJ failed to consider the effects of his mental impairments in combination with his physical impairments. The Court finds that Plaintiff's arguments in that regard largely amount to an impermissible

12

request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence."). Wrapped up with his arguments concerning the alleged combined effects of his impairments, Plaintiff argues in particular (but in passing) that the ALJ did not sufficiently account for Dr. See's opinion that Plaintiff would often miss work. ([11] at 15.) However, concerning Dr. See opinion, the ALJ explained: "Dr. See's opinion that the claimant would be expected to miss work about once a month because of his impairments and treatment is not given great weight because it is not supported by any compelling examination findings and is inconsistent with his positive response to treatment including the CPAP machine, inhalers, HTN medication, injections and physical therapy." (R. 571 (citation omitted).) Given this analysis, the Court finds that the ALJ did sufficiently explain why she did not believe that the opined absenteeism was consistent with the record. Accordingly, the Court ultimately finds the entirety of Plaintiff's second arguments unavailing.

13

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [11] is denied, and the Commissioner's cross-motion for summary judgment [20] is granted.

**SO ORDERED.**                  **ENTERED:**

**DATE:**    **December 16, 2024**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**